Case 05-62657    Filed 03/30/06    Doc 69

POSTED ON WEB SITE

FILED

MAR 3 0 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Ronald Allison Family Trust,<br><br>   Debtor.<br><br>Scripps Investments & Loans, Inc., et al.,<br><br>   Movants,<br><br>v.<br><br>Ronald Allison Family Trust, Debtor,<br><br>   Respondent. | Case No. 05-62657-B-11<br><br>DC No. BMJ-1 |

**MEMORANDUM DECISION REGARDING MOTION TO REOPEN CASE
AND FOR NULLIFICATION OF AUTOMATIC STAY**

Albert J. Berryman, Esq., of Baker, Manock & Jensen, appeared on behalf of Scripps Investments & Loans, Inc., et al ("Scripps").

Marc A. Levinson, Esq., of Orrick, Herrington & Sutcliffe, LLP, appeared on behalf of the Ronald Allison Family Trust ("Trust").

   Scripps moves for an order reopening the case, retroactively annulling the automatic stay and validating the post-petition foreclosure sale of personal property. The Trust opposes the relief sought by Scripps. This Memorandum Decision contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 362. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(G). For the reasons that follow, Scripps' motion to reopen the case to decide this issue will be granted. Scripps' motion to determine that

there was no automatic stay will be granted. The alternative motion to annul the automatic stay will be denied. Scripps' motion to validate the foreclosure sale will also be denied.

**Facts.**

At 9:43 a.m. on the morning of October 28, 2005, the Trust filed for bankruptcy protection under chapter 11. The Trust's attorney notified Scripps of the bankruptcy filing, of the automatic stay, and of the Trust's purported ownership of certain membership interests in another entity, AB Parking Facilities, LLC (the "AB Memberships").[1] That afternoon, Scripps foreclosed a security interest against the AB Memberships without getting relief from the automatic stay. The Trust failed to file its schedules, statement of financial affairs, and other documents required by 11 U.S.C. § 521 and Fed.R.Bankr.P. 1007. The court therefore dismissed this bankruptcy case on December 22, 2005, after a hearing on the court's order to show cause. The case was closed on January 31, 2006. Scripps now moves to reopen the case and asks the court to nullify the automatic stay and validate the foreclosure sale.[2]

/ / /

---

[1] At 10:45 a.m. on October 28, 2005, the Trust's attorney, John Eleazarian, sent a letter by telefax to Scripps' attorney, Michael Breslauer, Esq., and others stating:

> Following this letter are the Chapter 11 petitions of A Partners, LLC, and of the Ronald Allison Family Trust. The Trust is the owner of the interest in AB Parking Facilities.
>
> The filing of these petition acts as an automatic stay of the foreclosure sales of the interests of the debtors. I understand that Mr. Briggs is also filing a Chapter 11 this morning.

At 11:15 a.m. the same day, Mr. Eleazarian sent a second telefax responding to Mr. Breslauer's request for copies of documents, including the "Notice of Sale in which Mr. Allison assigned his interest [in A.B. Parking Facilities, LLC] to the Trust." Scripps does not dispute that these letters and documents were sent to and received by its counsel.

[2] Apparently, Scripps is prosecuting a judicial foreclosure/receivership action against the assets of AB Parking Facilities, LLC (AB Parking), Ronald Allison and others in the State court. Scripps contends that it now owns Ronald Allison's interest in AB Parking and a dispute has arisen in the State court litigation over which entity, and which attorneys, now control AB Parking's defense of that litigation.

2

**Issues.**

Scripps raises two issues. The first is whether the automatic stay ever applied to the Trust in light of Scripps' contention that the Trust was ineligible for bankruptcy relief under 11 U.S.C. § 109(d).[3] The second issue is whether, assuming the stay did arise, the court should retroactively annul the automatic stay.

**Discussion.**

**Jurisdiction.**

Scripps argues that the Trust is an estate planning device and was not a "person" eligible for chapter 11 relief under § 109(d). The eligibility requirements of § 109 are not jurisdictional. *In re Wenberg*, 94 B.R. 631 (9th Cir. BAP 1988), *aff'd*, 902 F.2d 768 (9th Cir. 1990). The Court in *Wenberg* pointed out that "the language of § 109 . . . states nothing of the bankruptcy court's subject matter jurisdiction, but concerns only the 'eligibility of debtors for relief.'" *Id.* at 637. Indeed, matters of jurisdiction are dealt with in 28 U.S.C. § 1334 and other parts of the United States Code.[4]

After dismissal of a case, the bankruptcy court retains ancillary jurisdiction to "interpret" and "effectuate" its orders. *Aheong v. Mellon Mortgage Company (In re Aheong)*, 276 B.R. 233, 240 n.8 (9th Cir. BAP 2002)(order granting motion to annul the automatic stay is in effect a motion to interpret and effectuate the dismissal order). Ancillary jurisdiction enables the court "to vindicate its authority and effectuate its decrees." *Sea Hawk Seafoods, Inc. v. State of Alaska (In re Valdez Fisheries Development Ass'n, Inc.)*, 439 F.3d 545, 549 (9th Cir. 2006)(citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80, 114

---

[3] Unless otherwise stated, all references and symbols referring to the Code, section or sections refers to the United States Bankruptcy Code 11 U.S.C. § 101, et seq., applicable to cases filed on or after October 17, 2005.

[4] The *Wenberg* court further enunciated policy reasons against the proposition that the court has no jurisdiction unless the debtor is eligible for relief. Such a holding could lead to absurd results. It would allow a debtor to delay creditors without the bankruptcy court having jurisdiction. It would allow creditors to contest jurisdiction, the discharge, and any other ruling of the court years after the full administration of the case. 94 B.R. at 636 (citing *In re Tatsis*, 72 B.R. 908, 911 (Bankr. W.D.N.C. 1987)).

S.Ct. 1673, 128 L.Ed.2d 391 (1994)). Accordingly, the court concludes that it has jurisdiction to rule on the automatic stay issues without regard to the Trust's eligibility under § 109, or the fact that the case has been dismissed.

**The Trust Was Not Eligible for Bankruptcy Protection, Including the Automatic Stay.**

The petitioner has the burden of proof to establish eligibility under § 109. *Shawmut Bank Connecticut, N.A. v. First Fidelity Bank (In re Secured Equipment Trust of Eastern Airlines, Inc.)*, 38 F.3d 86, 89 (2nd Cir. 1994). A non-business trust is not a "person" eligible for chapter 11 relief. *Hunt v. TRC Properties, Inc. (In re Hunt)*, 160 B.R. 131, 135 (9th Cir. BAP 1993).

The bankruptcy was not dismissed based on the lack of eligibility and that issue was not previously adjudicated. The Trust's voluntary petition (filed without supporting schedules) states under "Type of Debtor" that the Trust is a "Business Trust." However, the Master Address List lists only two creditors, Scripps and Charles W. Briggs, owner of the other AB Memberships. Other courts have attempted to define what a "business" trust is and when it may be eligible for bankruptcy relief, but none of those factors appear here. *In re Sung Soo Rim Irrevocable Intervivos Trust*, 177 B.R. 673 (Bankr.C.D.Cal. 1995). It is highly unlikely that a "business" would have only two creditors; the name "Ronald Allison Family Trust" does not suggest that the Trust is a business, and the Trust offers no evidence to show or even suggest that it is. More importantly, the Trust never filed any schedules or statement of financial affairs to show that it has any business assets, business income, business expenses, or other business activity. The Trust has failed to establish, or even make a colorable showing on the issue of eligibility. For purposes of this motion, the court must assume, without finding, that the Trust is a non-business trust and that it was not eligible for chapter 11 relief when it filed the petition.

Scripps contends that the automatic stay did not arise at the commencement of this case pursuant to § 362(a) because the Trust was not eligible for relief under § 109(d). Many courts have wrestled with the question of jurisdiction where a chapter 13 case is filed by someone who is not eligible for relief under § 109(e). The courts have universally found that

4

jurisdiction exists and that the debtors have the right to amend their pleadings (to show eligibility) or convert their case to another chapter (7 or 11) where they are eligible for relief. *See Wenberg, supra*, 94 B.R. at 635-37. However, in each of those cases, the debtor was a "person" within the meaning of the Bankruptcy Code. This appears to be a case of first impression because (1) it deals with the automatic stay, not jurisdiction, and (2) the Trust is not a "person" entitled to file for relief under any chapter of the Bankruptcy Code.[5] The eligibility problem here is not curable by amendment of the petition or conversion of the case. There is nothing the Trust could do in its present form to make itself eligible to refile another petition.

It is generally recognized that the automatic stay under § 362(a) arises automatically

---

[5] The court notes that § 362(b)(21) was added to the Code with the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). This addition creates a new exception to the automatic stay for "any act to enforce any lien against or security interest in real property; (A) if the debtor is ineligible under section 109(g) to be a debtor in a case under this title. . . ." Section 362(b)(21) is not applicable to this Debtor, or to these facts, but it does signal a recognition by Congress that the automatic stay is not absolute in every case. BAPCPA added several provisions wherein the automatic stay is either limited in duration or not triggered. The addition of new Code §§ 362(c)(3) & (c)(4) (limiting or conditioning the automatic stay in serial filing cases) illustrates that the automatic stay is not so "automatic" in cases of abuse and that it may no longer be the inviolable "cornerstone of the Bankruptcy Code." *See In re Flores*, 291 B.R. 44, 48 (Bankr.S.D.N.Y. 2003) (citations omitted). As the courts begin to interpret BAPCPA, it is clear that issues of eligibility, jurisdiction and the automatic stay are getting a fresh new look.

Numerous courts have wrestled with the eligibility issues under new § 109(h), which requires an individual debtor to complete a course in credit counseling before he or she is eligible to file a bankruptcy petition. One court compared the language of § 301(a) with the limitation of § 109(h) and concluded that a petition filed without § 109(h) compliance is void *ab initio*. *See In re Rios*, 336 B.R. 177, 180 (Bankr.S.D.N.Y. 2005). Other courts are rejecting that view for various policy reasons and following the § 109(e) (chapter 13) eligibility cases, *i.e.*, that the petition filed by an ineligible debtor is valid, the court has jurisdiction, and the proper remedy is dismissal. *In re Ross*, 338 B.R. 134 (Bankr.N.D.Ga. 2006); *In re Tomco* __ B.R. __, 2006 WL 459347 (Bankr.W.D.Pa. 2006). None of those cases squarely address the automatic stay issue, but the policy reasons given in the cases suggest that the courts might also uphold the automatic stay when presented with the issue, not withstanding the § 109(h) eligibility problem. Notably, those cases all appear to involve petitions filed by individuals who could be debtors, but for the credit counseling problem. In each of those cases, the courts have tried to fashion a result which protected the rights, and the property, of the individuals who came to court, often in *propria persona*, seeking relief. Here, the Trust is not an individual and the court can find no compelling reason to extend the policy considerations in those cases to the facts of this case.

upon the commencement of a bankruptcy case. But the first sentence of the statute conditions its own application, "... *a petition filed under section 301*, 302, or 303 of this title ... operates as a stay, applicable to all entities ...." (Emphasis added.) Sections 302 and 303 deal with joint and involuntary petitions respectively, and are not applicable here. Section 301 defines when a bankruptcy case is commenced, "[a] voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter *by an entity that may be a debtor under such chapter.*" (Emphasis added.)

Section 109(d) defines who, or what kind of entity, may be a debtor under chapter 11, "[o]nly a ... *person that may be a debtor under chapter 7 of this title* ... may be a debtor under chapter 11 of this title." (Emphasis added.) Section 109(b) defines who, or what may be a debtor under chapter 7, "[a] *person* may be a debtor under chapter 7 of this title ...." (Emphasis added.) Section 101(41) defines the term "person" to include "individual, partnership, and corporation." The Bankruptcy Code elsewhere defines the term "entity" to include "person, estate, trust, governmental unit, and United States trustee." § 101(15). A "business trust" falls within the definition of a "corporation" (§ 101(9)(A)(v)) and is therefore a "person." However, by comparing the term "entity," which includes a "person" and a "trust," with the term "person" which excludes a non-business trust, the courts have concluded that neither a non-business trust, nor its representative trustee, are "persons" eligible for chapter 11 relief. *Hunt, supra*, 160 B.R. at 136.

Here, the Trust was not a "person" within the meaning of the Bankruptcy Code. The Trust was therefore not eligible for relief under chapter 11, or any other chapter of the Bankruptcy Code. Since the petition in this case was not filed by an "entity that may be a debtor," the condition which triggers the automatic stay, a petition under § 301, was never realized. The court is not willing to proclaim here that the filing of a petition by an ineligible debtor is void *ab initio*. Neither is the court declaring that the automatic stay is absolutely and always conditioned on eligibility under § 109, as that issue in any other context is not before the court. However, the court must conclude that in the rare instance where the filing entity is not a "person" or other form of entity that could ever be entitled to bankruptcy relief,

under any chapter of the Bankruptcy Code, whether by amendment of the petition, or conversion of the case, the automatic stay, by its own definition, does not arise.

The Trust argues that Scripps should not be rewarded for its knowing violation of the automatic stay. That argument begs the question of whether there was an automatic stay for Scripps to violate. The Trust's position is countered by the equally compelling argument that the Trust, an entity that could never qualify for bankruptcy relief in any form, should not be rewarded for running into bankruptcy court and impairing its creditors by invoking protections to which it was not entitled, and could not have been entitled, as a matter of law.

**The Balance of the Equities Tips Against the Granting of Retroactive Relief from Stay**

Alternatively, Scripps asks this court to retroactively annul the automatic stay based on the equities of the case. Normally, the court would decline to deal with this issue based on the ruling above that there was no stay to annul. However, this is a case of first impression, and this issue will not be finally resolved until the time for appeal has run, or the appeal process has been exhausted. As noted above, the Trust's status as a "non-business" trust has not been formally adjudicated. If the decision above is reversed on appeal, it may be necessary for the court to rule on the annulment issue, which would then set the stage for another lengthy appeal. The court therefore concludes that the annulment issue is not moot and will rule on the alternative motion to annul the automatic stay as if it did arise on commencement of the case.

Section 362(d) sets forth the grounds for relief from the stay. It provides that the court shall grant relief by terminating, annulling, modifying or conditioning the stay "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). A bankruptcy court has authority to make exceptions to, and to annul, the automatic stay under § 362(d). *Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 572 (9th Cir.1992). Annulment provides retroactive relief, which, if granted, would moot any issue arising out of a stay violation. *Schwartz,* 954 F.2d at 573. The decision whether cause exists for retroactive relief from the automatic stay is a matter within the discretion of the bankruptcy court. *In re Murray,* 193 B.R. 20, 22 (Bankr.E.D.Cal. 1996)(*citing In re*

*Siverling*, 179 B.R. 909, 911 (Bankr.E.D.Cal. 1995)), *aff'd* No. Civ. S-95-470-WBS, slip op. (E.D.Cal. 1996)). Retroactive relief should be granted only in "extreme circumstances." *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir. 1995) (citation omitted).

The test for retroactive relief from stay is set forth in *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir.1997), *cert. denied*, 524 U.S. 952 (1998). In that case, the Ninth Circuit stated, "this court, similar to others, balances the equities in order to determine whether retroactive annulment is justified." *Id.* at 1055. The court in *In re Fjeldsted*, 293 B.R. 12, 25 (9th Cir. BAP 2003) enumerated several "equity" factors, which relate to the debtor's and creditor's good faith, the prejudice to the parties, and the judicial or practical efficacy of annulling the stay. However, the courts have consistently begun this inquiry by asking "whether the creditor was aware of the bankruptcy petition." *See Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055.

In this case, it is undisputed that Scripps had knowledge of the bankruptcy before it foreclosed on the AB Memberships. Scripps had notice that the Trust asserted an ownership interest in the AB Memberships, which, if true, would have made them property of the bankruptcy estate and subject to the protection of the automatic stay. There was no showing of exigent circumstances that would support the need for emergency relief, or could justify a good faith violation of the automatic stay, *i.e.*, the AB Memberships were not in danger of disappearing or being destroyed while Scripps sought some resolution of the automatic stay issues. Instead of quickly acting to resolve the disputed issues, Scripps ignored the bankruptcy and foreclosed anyway. It then waited almost four months until a dispute arose in the State court over ownership of the AB Memberships, to come to this court for the relief it should have gotten before it foreclosed. All of the arguments Scripps makes for relief from the automatic stay could have, and should have been raised early in the case. The fact that the court might, in retrospect, have granted a timely motion for relief is not necessarily cause to annul it now. *See Murray, supra*, 193 B.R. at 22 (holding that the decision in *Siverling* "is not to be construed to validate every violation of the automatic stay where relief would have been granted had it been sought prior to the violation.") To annul the stay now would

be to reward Scripps for acting in conscious disregard of the Bankruptcy Code, which would "*unjustly harm the integrity of the bankruptcy process.*" *Murray*, 193 B.R. at 22 (Emphasis original). Scripps acted with knowledge of the possible automatic stay; if there is a problem now with its foreclosure based on the automatic stay, it created that problem by ignoring the stay relief procedures. The court is not persuaded that "extreme circumstances" exist for retroactive relief to fix the problem.

**The Court Cannot Validate the Foreclosure Sale.**

The law in this circuit is that violations of the automatic stay are void. *Schwartz*, 954 F.2d at 572. Scripps wants the court to affirmatively validate its foreclosure of the AB Memberships on the grounds that (1) there was no automatic stay in the first place, and (2) the Debtor did not own the AB Memberships when it filed bankruptcy. The Trust contends that it did own the AB Memberships and that the foreclosure sale was defective on other grounds in addition to the alleged stay violation. To the extent that Scripps wants the court to adjudicate who owned the AB Memberships at commencement of the case, that issue is not properly before the court. A dispute with third parties over property of the estate requires an adversary proceeding pursuant to Fed.R.Bankr.P. 7001(2) and cannot be decided in a motion for relief from the automatic stay. *In re Rowland*, 140 B.R. 206, 207 n.1 (Bankr. S.D. Ohio 1992)(citing *In re Colrud*, 45 B.R. 169, 172 n.2. (Bankr. Alaska 1984)).

Similarly, this court cannot validate or invalidate the foreclosure on any grounds without an adversary proceeding. An adversary proceeding to adjudicate issues relating to property of the estate and/or the validity of the foreclosure would constitute "new relief independent of the court's rulings," which the court cannot entertain in a dismissed case. *See Taylor v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir. 1989). The dismissal order revested all property in the Debtor and restored "as far as practicable . . . all property rights to the position in which they were found at the commencement of the case." (Citations omitted.) *Aheong, supra*, 276 B.R. at 240 n.8; 11 U.S.C. § 349. Violations of the automatic stay are not excused by dismissal of the case. However, this court no longer has jurisdiction over any property of this estate. The issues of ownership of the AB Memberships, and

validation of Scripps' foreclosure, will have to be decided on another day in another court.

**Conclusion**.

Based on the foregoing, Scripps' motion to reopen the case for relief on this matter will be granted. Scripps shall pay any fees associated with reopening the case, to the clerk of the bankruptcy court, within five (5) days of entry of this order. The case will remain open until the time for appeal has run or, if there is a timely appeal, until there is a final order. The Trust has failed to establish that it was a "person" eligible for relief under any chapter of the Bankruptcy Code. Based thereon, the court finds and concludes that the automatic stay did not arise in this case upon the filing of the petition. Scripps' motion will be granted to the extent it seeks a ruling that there was no automatic stay in this case. At the same time, Scripps has not shown that cause exists to annul the automatic stay. The motion will be denied to the extent it seeks to annul the automatic stay as alternative relief. The motion to adjudicate ownership of the AB Membership and validate Scripps' foreclosure is not properly before the court and will be denied as well.

Dated: March 30, 2006

W. Richard Lee
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

Marc A. Levinson
400 Capitol Mall #3000
Sacramento CA 95814-4407

Office of the US Trustee
2500 Tulare Street, Room 1401
Fresno, CA 93721

Albert Berryman
5260 N Palm Ave #421
Fresno, CA 93704-2209

John Eleazarian
7489 N 1st St #104
Fresno, CA 93720-282

Ronald Allison Family Trust
1171 Fulton Mall 12th Fl
Fresno, CA 93721

DATED: March 31, 2006        By: _____
                                  Deputy Clerk

EDC 3-070 (New 4/21/00)